UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

                                              Case No. 16-70353 (AST)

ANTHONY J. BOGLINO,
STEFANIE A. BOGLINO,                                    Chapter 7
A/K/A STEFANIE A. ALBA,

                        Debtor.
-------------------------------------------------------------------X

## DEBTORS' OPPOSITION TO
## APPLICATION FOR RELIEF FROM AUTOMATIC STAY

      Anthony J. Boglino and Stefanie A. Boglino, a/k/a Stefanie A. Alba (collectively, the "Debtor"), the above-referenced debtors, by and through their counsel, Macco & Stern, LLP, hereby oppose the *Application for Relief from Automatic Stay* (the "Application"), dated April 22, 2016 [Docket No. 11] filed by Wells Fargo Bank, N.A. ("Wells"), and respectfully set forth as follows:

## PROCEDURAL BACKGROUND

      1.      On January 29, 2016 (the "Petition Date"), the Debtors filed a joint voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

      2.      On January 29, 2016, R. Kenneth Barnard, Esq. (the "Trustee") was appointed the interim chapter 7 trustee of the Debtors' joint estate, has since duly qualified, and is now the permanent trustee.

      3.      On April 22, 2016, Wells filed the Application seeking relief from the Bankruptcy Code §362 Automatic Stay in order to commence a foreclosure action against the Debtors on certain residential real property, located at, and known as 3878 Darby Lane, Seaford, NY 11783 (the "Real Property").

      4.      By Order, dated April 27, 2017, the Debtors received their chapter 7 discharge.

## FACTUAL BACKGROUND

5.  On October 1, 2012, Debtors executed a note of indebtness (the "Note") in favor of Mortgage Research Center, LLC, dba VanMortgage Center ("MRC"). Contemporaneously therwith, Debtors executed a mortgage (the "Mortgage") in favor of MRC upon the Real Property as security for the Note.

6.  By assignment (the "Assignment"), dated February 11, 2016, the Mortgage and Note were assigned to Wells.

7.  At all relevant times, the Debtors made payments to Wells.

8.  Prior to the Petition Date, the Debtors had a checking account at TD Bank, N.A. ("TD"), assigned account number ending in XXX6711 (the "TD Account"). Copies of the bank statements for the TD Account from August 2015 through April 2016 are annexed hereto as **Exhibit A**.

9.  Debtors paid all amounts due and owing under the Note to Wells by having Wells, or their servicer, make monthly sweeps of the TD Account, commonly referred to as "AutoPay".

10. In August 2015, Debtors informed Wells that Debtors no longer wished to use to the AutoPay service and instead would be making monthly payments under the Note manually.

11. Notwithstanding the request to remove AutoPay, Wells or their servicer continued to sweep the TD Account.

12. On August 28, 2015, Wells used to AutoPay feature to take the August 2015 payment from the Debtors' TD Account in the amount of $2,840.52 (the "August Payment").

13. On September 2, 2015, Wells used to AutoPay feature to take the September 2015 payment from the Debtors' TD Account in the amount of $2,840.52 (the "September Payment").

14. On October 27, 2015, Wells used to AutoPay feature to take the October 2015 payment from the Debtors' TD Account in the amount of $2,731.27 (the "October Payment").[1]

15. On November 3, 2015, Wells used to AutoPay feature to take the November 2015 payment from the Debtors' TD Account in the amount of $2,731.27 (the "November Payment").

16. Due to the various overcharges from the AutoPay feature, Debtors decided to prepay the Mortgage and Note.

17. On January 11, 2016, Debtors drafted a certified check payable to Wells in the amount of $2,731.52 for the December 2015 payment (the "December Payment").

18. On January 11, 2016, Wells used to AutoPay feature to take the January 2016 payment from the Debtors' TD Account in the amount of $2,731.27 (the "January Payment").

19. On January 14, 2016, Debtors drafted a certified check payable to Wells in the amount of $2,731.52 for the February 2016 payment (the "February Payment").

20. Between October 1, 2015 and February 1, 2016, Wells caused the TD Account to be overdrawn thirteen (13) times by using the AutoPay as follows:

| Date | Amount | Outstanding Mortgage Payment |
| --- | --- | --- |
| October 2, 2015 | $2,840.52 | October 2015 |
| October 7, 2015 | $2,840.52 | October 2015 |
| October 13, 2015 | $2,840.52 | October 2015 |
| November 17, 2015 | $2,731.27 | November 2015 |
| November 20, 2015 | $2,731.27 | November 2015 |
| November 25, 2015 | $2,731.27 | November 2015 |
| December 29, 2015 | $2,731.27 | December 2015 |
| January 4, 2016 | $2,731.27 | December 2015 |
| January 6, 2016 | $2,731.27 | December 2015 |
| January 7, 2016 | $2,731.27 | December 2015 |
| January 12, 2016 | $5,462.54 | December 2015 and January 2016 |
| January 15, 2016 | $5,462.54 | December 2015 and January 2016 |
| January 21, 2016 | $5,462.54 | December 2015 and January 2016 |

---

[1] Due to an adjustment in the Debtors' escrow charges for the Mortgage and Note, the Debtors' monthly payments to Wells decreased from $2,840.52 to $2,731.27 in October 2015.

21. As of May 1, 2016, Debtors had incurred thirteen (13) overdraft fees of $35.00, totaling $455.00 in unnecessary fees.

22. Additionally, the following overdrafts were after the Debtors had already paid Wells the mortgage payment for that month: (i) the three (3) attempted AutoPays in November 2015 were after the November Payment; and (ii) the three (3) attempted AutoPays in January were after the January Payment.

23. Because of Wells continued use of the AutoPay feature despite Debtors' request to cease, Debtors ultimately closed the TD Account in order to prevent further fees from accruing.

24. Moreover, the Debtors made all payments until March 1, 2016, when they determined that Wells had been overcharging the TD Account. Copies of mortgage statements (the "Mortgage Statements") from Wells are annexed hereto as **Exhibit B**.

25. The Mortgage Statements do not reflect the December Payment, January Payment or February Payment.

## ARGUMENT

26. The Application states that the Debtors have failed to make the payments due from February 2015 through April 1, 2015.

27. However, as set forth above, Debtor made the February Payment by certified check on January 14, 2016.

28. Moreover, the Debtors currently have sufficient funds to make the March, April and May payments to Wells.

29. The Debtors believe that Wells has overcharged them $455.00, and the March, April and May payments should be offset by such amount.

30. The Debtors do not believe that Wells is entitled to relief from the Bankruptcy Code §362 Automatic Stay because Wells is adequately protected by: (1) monthly cash payments which Wells had received until March 1; and (2) an equity cushion in the Real Property of approximately $50,000, as reflected on Schedule D to the Debtors' petition.

31. Based on the foregoing, the Debtors do not believe that Wells is entitled to relief from the Bankruptcy Code §362 Automatic Stay, but should provide a full accounting to the Debtors in order for the Debtors to cure the alleged defaults and bring the account current.

**WHEREFORE**, the Debtors respectfully request that the Court deny the Application of Wells for relief from the Automatic Stay, and grant such other and different relief as the Court deems just and proper.

Dated: Islandia, New York
　　　　May 13, 2016

　　　　　　　　　　　　　　　　　　MACCO & STERN LLP
　　　　　　　　　　　　　　　　　　Attorneys for the Debtor

By: _____
　　　Michael J. Macco
　　　A Member of the Firm
　　　2950 Express Drive South, Suite 109
　　　Islandia, New York 11749
　　　(631) 549-7900

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
In re:

ANTHONY J. BOGLINO,
STEFANIE A. BOGLINO,
A/K/A STEFANIE A. ALBA,

                      Debtor.
---------------------------------------------------------------- X

Case No. 16-70353 (AST)

Chapter 7

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK)
COUNTY OF SUFFOLK)s:-

      Carol Smith, being duly sworn deposes that deponent is not a party to the above-captioned action, is over the age of 18 years and resides at West Islip, New York.

      On May 13, 2016 deponent served the within DEBTORS' OPPOSITION TO APPLICATION FOR RELIEF FROM AUTOMATIC STAY upon the following parties, at the addresses designated by said parties for that purpose, by depositing a true copy of the same, enclosed in a post-paid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York:

Office of the U.S. Trustee
Long Island Federal Courthouse
560 Federal Plaza
Central Islip, NY  11722

R. Kenneth Barnard, Esq.
3305 Jerusalem Ave., Suite 125
Wantagh, NY  11793

Aleksandra Krasimirova Fugate, Esq.
Woods Oviatt Gilman, LLP
700 Crossroads Building
2 State Street
Rochester, NY  14614

                                                                     _/s/ Carol Smith_____
                                                                       Carol Smith

Sworn to before me this
13th day of May, 2016

/s/ Janine M. Zarrilli
Notary Public
*Janine M. Zarrilli*
*Notary Public, State of New York*
*No. 01ZA5084708*
*Qualified in Nassau County*
*Commission Expires September 8, 2017*